Jimmy Dale LACKEY,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 86–150.

Supreme Court of Wyoming.

Jan. 20, 1987.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, Julie Naylor, Appellate Counsel, and Norman A. Newlon, Legal Intern, for appellant (defendant).

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Michael N. Patchen, Legal Intern, for appellee (plaintiff).

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT, and MACY, JJ.

MACY, Justice.

Appellant Jimmy Dale Lackey pled guilty to three counts of burglary under § 6–7–201(a)(iii), W.S.1977. He was sentenced on each count to a term of one to three years to be served consecutively in the Wyoming State Penitentiary. However, in the judgment and sentence entered August 31, 1982, his sentence was suspended, and he was placed on probation. Appellant now appeals to this Court from an order revoking his probation and reinstating the original sentence.

We reverse.

Appellant states the issue for our consideration as follows:

"Does a district court have jurisdiction to revoke probation based on an action filed after the period of probation has ended[?]"

Appellee sets forth the following issues:

"I. IF THE RECORD IS SILENT ABOUT THE LENGTH OF PROBATION GIVEN THE APPELLANT, IS THE TIME OF PROBATION THE SAME LENGTH AS THE MAXIMUM SENTENCE GIVEN?

"II. CAN PROBATION REVOCATION PROCEEDINGS START WITHIN A REASONABLE TIME AFTER THE END OF PROBATION FOR A VIOLATION COMMITTED DURING THE PROBATIONARY PERIOD?"

The judgment and sentence entered by the district court following appellant's guilty plea set forth the following terms and conditions of probation:

"1.  That you shall immediately travel to and take up residence in the home of your parents, Mr. and Mrs. Gerald Lack[e]y, in Angleton, Texas, and there remain and abide by the reasonable rules and conditions of your parents and their household.  You shall pay at least $50.00 per month to your parents as and for your room and board.

"2.  That you shall immediately obtain and maintain employment through the Carpenter's Union and Seaboard Contractors in Freeport, Texas, and maintain said employment until you have first obtained other and different employment.

"3.  That you shall immediately enroll as a part-time student with a minimum of five credit hours per semester at Brazosport Junior College in Port Brazos, Texas, and shall there complete at least four semesters at said institution.

"4.  That you shall pay at least 50% of your income, after deductions for taxes and social security, to the support of your minor children and you shall pay all of the expenses of the birth of your minor child by Leopi Levy.

"5.  That you shall engage in and remain in psychological counseling until such time as such counseling is not necessary, in the professional opinion of your counselor.

"6.  That you shall use no controlled substances, except as prescribed by a licensed physician upon a current prescription in the ordinary course of his professional practice.

"7.  That you shall not use alcohol to excess, excess being defined as being under the influence of alcohol to a degree which renders you incapable of concealing the fact that you have consumed alcoholic beverages.

"8.  That you shall not engage in any meretricious relationships.

"9.  That you shall lead a worthy, respectable and law-abiding life and you shall commit no violations of law.

"10.  That you submit to the supervision of and accept and abide by all the rules, directions and regulations of the probation and parole board."

In accordance with those terms and conditions, appellant returned to Texas.

On January 16, 1984, the department of probation and parole filed a petition for revocation of probation and bench warrant in which it alleged:

"3.  That following the granting of probation, said Defendant was permitted to reside in the State of Texas, under the terms and conditions of the Interstate Compact.

"4.  That information received from Texas authorities indicates that said Defendant has not been in contact with Texas authorities for over three (3) months and his present whereabouts is unknown.

"5.  That said Defendant has failed to make any payments towards his court-ordered fine of nine hundred dollars ($900.00).

"6.  That inasmuch as said Defendant has not conformed to probationary supervision, it appears that neither said Defendant nor society will benefit by continuing said Defendant on probation."

On the basis of those allegations, the district court ordered the clerk of court to issue a bench warrant for the apprehension and arrest of appellant.  On January 18, 1984, the bench warrant was issued.

The record indicates that nothing further happened until nearly eleven months later when, on December 7, 1984, appellant filed a motion for a speedy revocation hearing in which he stated that he had been convicted of burglary in Texas and was confined in the Texas department of corrections.  Appellant also stated that the warden would release him into the custody of Wyoming authorities upon issuance of a bench war-

rant with the understanding that, after the revocation hearing, appellant would be returned to Texas. The record indicates that another eleven months passed before the State took any action. Then, on November 6, 1985, after appellant inexplicably returned to Wyoming, the State filed a motion for a hearing on the petition for revocation which had been filed nearly two years earlier.

At the hearing, appellant argued that the petition should be dismissed, because the conditions of his probation did not require him to contact Texas authorities or pay a fine of $900, and consequently his failure to do so did not constitute a violation of probation. In response, the State moved to amend the petition to allege a violation of the condition requiring appellant to lead a law-abiding life. Without responding to the State's motion, the district court granted appellant's motion to dismiss the petition on the ground that it was "totally insufficient." On the same day, the State filed a second petition for revocation of probation in which it alleged:

> "The Defendant failed to live a law[-]abiding life in that he was convicted of burglary of a building in the District Court of Brazoria County, Texas, Twenty-[T]hird Judicial District on August 3, 1984."

A hearing on the second petition was held on January 14, 1986, nearly three and one-half years after appellant was sentenced. Following the hearing, on April 25, 1986, the district court issued an order revoking appellant's probation and reinstating the original sentence.

■ The first issue we must address concerns the length of appellant's probationary term. As shown above, the judgment and sentence provides only that appellant shall be placed on probation; it is silent as to the specific term of probation. It has been held that when a specific period of probation is not provided for in the judgment and sentence, the period is deemed to be the maximum possible period of imprisonment. 21 Am.Jur.2d, Criminal Law § 567 (1981); 24 C.J.S., Criminal Law § 1571(4) (1961). We express no opinion as to the validity of that rule and, in any event, do not find it to be controlling where, as here, there is other evidence in the record tending to show that a definite period of probation was specified.

In the present case, a transcript of the original sentencing hearing is not included in the record on appeal. However, at the January 14, 1986, revocation hearing, appellant testified as follows:

"Q. * * * Was anything said in the [sentencing] hearing * * * about putting you on probation?

"A. Yes, sir.

"Q. And can you tell us what was said about putting you on probation?

"A. Well, I was sentenced to three to nine years, and the judge suspended that sentence and gave me a three[-]year probation.

"Q. And did he specifically state that it was a three[-]year probation?

"A. Yes, sir[,] he did.

 *  *  *  *  *  *

"Q. * * * You went directly down to Texas?

"A. Yes, sir.

"Q. And, what were you treated as being on probation? Was it a three[-]year probation, a nine[-]year probation, do you know how it was being treated?

"A. Three years.

"Q. Did you ever receive anything or did anyone tell you any different, that it was for any different period of probation?

"A. No, sir."

The State offered no evidence to refute appellant's testimony.

We have said that:

"'The benefit of the doubt as to a sentence which is not certain, definite and free from ambiguity should be given to the accused, and serious uncertainty in the sentence must be resolved in favor of liberty.'" *King v. State,* Wyo., 720 P.2d 465, 469 (1986), quoting 24 C.J.S., Criminal Law § 1585 at 580 (1961).

Because the judgment and sentence is silent as to the specific term of probation, because appellant's testimony is the only evidence in the record tending to show the length of probation, and because adoption of the State's view would seriously restrict appellant's liberty, we find that the probationary term was three years.

■ We turn next to the question of whether the district court had jurisdiction to revoke appellant's probation after the term had expired. Section 7–13–304, W.S. 1977, provides in pertinent part:

"At any time *during the period of * * * probation,* the court may issue a warrant and cause the defendant to be arrested for violating any of the conditions of probation * * *." (Emphasis added.)

While this section obviously does not require that revocation proceedings be completed within the probationary period, it does require that such proceedings be initiated during the period.

"If the revocation procedure is started properly before the expiration of the statutory period, the court retains jurisdiction even though the final hearing and adjudication are after the end of the period." 24 C.J.S., Criminal Law § 1618(11) at 909 (1961).

Thus, in order to determine whether the district court had jurisdiction to revoke appellant's probation, we must decide whether the revocation proceedings were initiated during the probationary period.

The second petition clearly was not filed within the three-year probationary term. As indicated previously, the judgment and sentence was filed August 31, 1982, and the second petition was not filed until November 27, 1985, almost three months after the term of probation expired. However, the issue is complicated by the State's claim that the second petition was an amended petition which related back to January 16, 1984, the date within the three-year probationary term when the first petition was filed.

There is little in the record to support the State's claim that the second petition was in fact an amended petition. As indicated previously, the State offered to amend the first petition at the November 27 hearing and, without responding to the State's offer, the district court dismissed the petition as totally insufficient. The second petition filed by the State was not captioned as an amended petition, nor did it refer in any way to the previous petition. Although the district court asked the State during the final revocation hearing if the second petition was intended to be an amendment of the first petition and the State responded affirmatively, it is not clear from the record whether the court accepted it as such.

Even assuming that the State intended the second petition to be an amendment of the first petition and that the district court accepted it as such, we are not persuaded that the amendment was proper. We have not previously considered the retroactive effect of an amendment within the context of a petition for probation revocation. However, as the State contends, the well-established rules governing amendment of a criminal indictment or information are analogous.

The law in Wyoming is that an information may be amended so long as the amendment is not prejudicial to the defendant and does not charge a different offense. *Sanville v. State,* Wyo., 553 P.2d 1386 (1976). The test for whether there is prejudice is whether the defense under the original indictment remains available after the amendment is made. 42 C.J.S., Indictments and Informations § 240 (1944).

Applying these rules to the present case, we find that the purported amendment was improper. Appellant's defense under the original petition—i.e., that the petition did not allege a violation of the conditions of probation—was no longer available under the second petition. More importantly, the second petition charged appellant with failing to live a law-abiding life in that he was convicted of burglary in Texas, an entirely different offense than that charged in the first petition.

The order revoking appellant's probation is vacated. The trial court is directed to

enter an order discharging appellant in compliance with § 7–13–304, W.S.1977.

BROWN, C.J., and THOMAS, J., each filed dissenting opinions.

BROWN, Chief Justice, dissenting.

Under the circumstances of this case I do not strongly disagree that appellant should be discharged from probation. The attempted revocation of probation left a great deal to be desired. My disagreement with the majority is the consequences that may flow from the rule of this case.

Appellant was incarcerated in a Texas prison for more than a year while he was on probation from Wyoming. The purposes of probation are defeated if a probationer is deemed to be serving a term of probation while in prison. A convict in prison should not be considered to have been living a law-abiding life during the period of his imprisonment. *Hill v. State,* 37 Tex.Crim. 415, 35 S.W.Rep. 660 (1896).

It seems that the better rule of law would be that a prison sentence interrupts probation and tolls the probationary period. *United States v. Gelb,* 175 F.Supp. 267 (S.D.N.Y.1959), aff'd 269 F.2d 675 (2d Cir. 1959), cert. denied 361 U.S. 822, 80 S.Ct. 66, 4 L.Ed.2d 66 (1959). See also, *Nicholas v. United States,* 527 F.2d 1160 (9th Cir.1976). This standard has been adopted by several states. See *People v. Peretsky,* 44 Colo. App. 270, 616 P.2d 170 (1980); and *Gillespie v. State,* 17 Wash.App. 363, 563 P.2d 1272 (1977).

In the case here, if appellant's probationary period was tolled by the length of time he spent in the Texas jail, the petition for revocation would be in time.

Furthermore, I think our rule should be that revocation proceedings can commence after the stated probationary period ends, provided the violation of probation occurred during the probationary period, and provided further that revocation proceedings be commenced within a reasonable time. There is considerable support for the rule I have suggested. *State v. Miller,* 289 Md. 443, 424 A.2d 1109 (1981); and *Common-*

*wealth v. Sawicki,* 369 Mass. 377, 339 N.E.2d 740 (1975).

Under the majority rule in this case, a probationer could neglect to make restitution or pay a fine until the end of his stated probationary period. He would then be absolved from his obligation if the probation department did not have time to file a petition for revocation before the stated time expired. The rule in this case grants a probationer a license to run amok during the waning days of his probation.

I would affirm the district court and hold that appellant's probationary period was tolled for the period of time he was in the Texas lockup.

THOMAS, Justice, dissenting.

What have we here? The statement of facts in the majority opinion does not disclose the entire story. Lackey is not a poor soul who has somehow been victimized by the system. Instead we have a miscreant, a convicted burglar, who was given the benefit of grace, in the form of probation by the trial court, and was permitted to return to the state of Texas. Instead of taking advantage of that opportunity to reform and become a constructive citizen, Lackey, while in Texas, and within a relatively short period of time, committed another burglary. He then was incarcerated by Texas authorities. We now find that the majority of this court is willing to consider the time that he served in the Texas penitentiary as satisfactory time to be counted toward his probationary term imposed because of the Wyoming conviction. This court should not do that, and I strongly disagree with the result.

In addition to the authorities which Chief Justice Brown has cited in his dissenting opinion, other cases make clear that the general federal rule is that imprisonment in a state institution outside the jurisdiction of a federal court tolls any probation period which may have been imposed by a federal court when the state sentence is for a crime which constitutes a violation of the federal probation agreement. *United States v. Martin,* 786 F.2d 974 (10th Cir.

1986); *Allen v. United States,* 209 F.2d 353 (6th Cir.1953), cert. denied 347 U.S. 970, 74 S.Ct. 782, 98 L.Ed. 1111 (1954); *United States, ex rel. Demarois v. Farrell,* 87 F.2d 957 (8th Cir.1937), reh. denied 302 U.S. 775, 58 S.Ct. 135, 82 L.Ed. 600 (1937; *United States v. Pisano,* 266 F.Supp. 913 (E.D. Pa.1967); *United States v. Gerson,* 192 F.Supp. 864 (E.D.Tenn.1961), aff'd 302 F.2d 430 (6th Cir.1962); *McGuire v. Warden, United States Penitentiary,* 122 F.Supp. 699 (W.D.Pa.1954). A period of probation is also subject to tolling if the convicted person, because of his own wrongdoing, is beyond the supervision and jurisdiction of probation authorities. *United States v. Workman,* 617 F.2d 48 (4th Cir.1980); *United States v. Gerson,* supra. As Chief Justice Brown's dissenting opinion demonstrates, this standard has been adopted in state courts either by statute or decision. *O'Shea v. State, Alaska,* 683 P.2d 286 (1984); *Wellons v. State,* 164 Ga.App. 100, 296 S.E.2d 397 (1982); *State v. Frazier,* 20 Wash.App. 332, 579 P.2d 1357 (1978).

Whether we accept the testimony of Lackey that he was incarcerated in Texas for one year and eight months, or whether we count the one year and three months between August 3, 1984, when he was convicted in Texas of burglary and his Texas parole on November 5, 1985, the period of time is ample, if it is discerned as properly tolling the period of probation in Wyoming and is not credited toward the three-year period of Wyoming probation, to sustain a conclusion that Lackey's probation was properly revoked. The last petition for revocation of probation was filed prior to April 25, 1986, the date on which the district court issued its order revoking Lackey's probation and sentencing him to the Wyoming State Penitentiary. Under the tolling rule Lackey's probation would not have ended prior to February 5, 1987, and the petition for revocation surely was timely. Under the circumstances there would be no need to consider the question of whether a petition for revocation and probation must be filed within the probationary term. This petition was filed within the probationary term.

In the district court Lackey also urged that the district court had violated his constitutional right to a speedy trial. That contention is not made in this court, probably in light of the decisions of the Supreme Court of the United States in *Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985); and *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). Those decisions demonstrate that not only was it the right of the authorities in Wyoming to delay their determination concerning revocation of Lackey's probation while he was incarcerated in Texas, but according to the Supreme Court that well may have been the proper choice.

Not even the crowded conditions at the Wyoming State Penitentiary justify excusing Lackey from his violation of the Wyoming probation. By his conduct in committing a subsequent burglary in Texas, he simply was thumbing his nose at the Wyoming court and spurning the probationary grace he had received. The action of the district court in revoking Lackey's probation and sentencing him to the penitentiary not only was lawful, but it was appropriate. I dissent from the majority opinion which apparently agrees with Lackey's position. The district court is entitled to be affirmed.