900 F.2d 1448
 Edward G. SCHEPP, Plaintiff-Appellant,
v.
FREMONT COUNTY, WYOMING, a Political Subdivision of the
State of Wyoming; Tim McKinney, Sheriff of Fremont County,
Wyoming, in his official and individual capacity; William
Eichelberger, County and Prosecuting Attorney for Fremont
County, Wyoming, in his official capacity, Defendants-Appellees.
 No. 88-1376.
 United States Court of Appeals,
Tenth Circuit.
 March 30, 1990.
 
 Stephen L. Pevar, American Civil Liberties Union, Denver, Colo. (Donald N. Rogers, Cheyenne, Wyo., with him on the briefs), for plaintiff-appellant.
 Jeffrey A. Donnell, Davis, Donnell, Worrall & Bancroft, P.C., Worland, Wyo., for defendants-appellees.
 Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and THOMPSON,* District Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Edward G. Schepp appeals from an adverse summary judgment and denial of a motion to amend his complaint. Schepp brought this action against the Fremont County Attorney, Fremont County Sheriff, and Fremont County pursuant to 42 U.S.C. Sec. 1983 for alleged constitutional violations incident to probation revocation proceedings initiated against Schepp in Fremont County, Wyoming. Subsequently, Schepp sought to add as an additional defendant the state trial court judge who presided at the probation revocation hearing. The district court denied the motion to add the state trial judge and granted summary judgment for all defendants.[1] Schepp v. Fremont County, Wyo., 685 F.Supp. 1200 (D.Wyo.1988). For the reasons discussed below, we affirm the district court's order.
 
 BACKGROUND
 
 2
 In March 1981, Schepp pled guilty in Wyoming state court to issuing fraudulent checks. Schepp appeared before Judge Robert B. Ranck, a Wyoming District Court Judge, who sentenced him to one year incarceration, and a one thousand dollar fine. Judge Ranck suspended the sentence and placed Schepp on one year probation with the sole condition that he make restitution on the checks within thirty days. The sentencing order was filed on July 17, 1981. Schepp did not repay the checks as required under the terms of his probation.
 
 
 3
 Accordingly, on July 9, 1982, the Fremont County Attorney prepared and signed a petition for revocation of Schepp's probation. The petition was filed by an assistant county attorney in the state district court on July 19, 1982, two days after Schepp's one-year probation ended. When the petition was filed, Judge Ranck ordered revocation proceedings to take place in Lander, Wyoming on July 29, 1982. Schepp could not be served at his last address, however, and Judge Ranck eventually ordered that a bench warrant issue for Schepp's arrest. At the time he issued the warrant, Judge Ranck indicated that Schepp was to be held without bail.
 
 
 4
 In October 1984, Schepp was arrested in Arizona and extradition proceedings were commenced to return him to Wyoming for the probation revocation. Schepp was released on bail in Arizona, however, and later "could not be located." Affidavit of Tim McKinney, R.Supp. Vol. I, at Tab 31, p. 2. Finally, in May 1986 Schepp was again arrested in Arizona on unrelated charges involving fictitious license plates. Extradition was ordered and Schepp was booked into the Fremont County Jail on Monday, June 2, 1986. He was served with a copy of the bench warrant and the county attorney was advised that Schepp was in jail awaiting probation revocation proceedings.
 
 
 5
 The Fremont County Attorney, William V. Eichelberger, filed a motion with Judge Ranck on Thursday, June 5, 1986 for a hearing on the petition for revocation and another motion for appointment of counsel on Schepp's behalf. Judge Ranck, who lives in Jackson, Wyoming, about 165 miles from Lander, did not act on the motion for appointed counsel, and set the revocation hearing for June 23, 1986, during his regularly scheduled monthly trip to Lander.[2] Judge Ranck refused to admit Schepp to bail pending the hearing.
 
 
 6
 At the June 23 revocation hearing, Schepp admitted that he had not complied with the restitution ordered by Judge Ranck as a condition of probation. Judge Ranck then revoked Schepp's probation, but ordered that upon receipt of the unpaid amount, Schepp's sentence would be suspended to the time he had served in the Lander County jail awaiting the revocation hearing. Schepp made full restitution of the outstanding checks at this time and he was released unconditionally. Appellant's Opening Brief at vii.
 
 
 7
 Schepp filed suit against the defendants in federal district court on August 19, 1987, more than a year and one month after he had been unconditionally released by the Wyoming courts. In his complaint he alleged the defendants, acting under color of state law, had deprived him of his constitutional rights under the Sixth, Eighth, and Fourteenth Amendments in violation of 42 U.S.C. Sec. 1983. Specifically, Schepp claimed that the petition to revoke his probation was filed late under Wyoming law, that he was denied a prompt preliminary hearing to determine probable cause for the revocation, that he was denied bail pending the revocation hearing, and that he was not appointed counsel to represent him at that hearing.
 
 
 8
 On December 4, 1987, Schepp sought to add Judge Ranck as an additional defendant to this lawsuit and assign liability to him for at least some of the constitutional deprivations Schepp claims to have suffered. The district court issued its orders denying the motion to amend and granting summary judgment for the named defendants on February 9, 1988.
 
 DISCUSSION
 I. The Motion to Add Judge Ranck
 
 9
 Permission to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The decision whether to grant a motion to amend the pleadings to add an additional party is generally left to the sound discretion of the district court. Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1274 (10th Cir.1989). The district court was clearly justified in denying the motion to amend if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim. E.g., Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (futility of amendment adequate justification to refuse to grant leave to amend); Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir.1989); Glick v. Koenig, 766 F.2d 265, 269 (7th Cir.1985); DeLoach v. Woodley, 405 F.2d 496, 497 (5th Cir.1968); see also 6 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1487, at 432-33 (1971).
 
 
 10
 The district court concluded that the proposed amendment naming the state trial court judge as a defendant would be futile because "Mr. Schepp could not prevail against Judge Ranck." R.Vol. I, Tab 79 at 2. As we explain below, Schepp could not recover either monetary damages or declaratory relief against Judge Ranck; therefore, the district court properly denied the motion to amend the complaint.
 
 
 11
 As a state court judge, Judge Ranck is entitled to absolute immunity for his judicial acts. Stump v. Sparkman, 435 U.S. 349, 355-57, 98 S.Ct. 1099, 1104-05, 55 L.Ed.2d 331 (1978). He is entitled to immunity even if he acted maliciously or in excess of his authority. Id.; Glick v. Koenig, 766 F.2d at 265. Schepp does not allege, nor does it appear from the record, that Judge Ranck lacked apparent jurisdiction over the probation revocation proceedings; this case was not clearly beyond his jurisdiction. See Stump v. Sparkman, 435 U.S. at 356-57, 98 S.Ct. at 1105 ("A judge ... will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' ") (citation omitted). Indeed, Schepp concedes that Judge Ranck is immune from any claim for monetary damages arising from this incident. Appellant's Brief at 26.
 
 
 12
 Schepp argues, however, that his claim for declaratory judgment against Judge Ranck would not be barred by the judge's absolute immunity, and that his motion to add him as a defendant should therefore be granted. Although Judge Ranck is not shielded by absolute immunity from declaratory or injunctive relief, Pulliam v. Allen, 466 U.S. 522, 541-42, 104 S.Ct. 1970, 1980-81, 80 L.Ed.2d 565 (1984), we disagree with Schepp's conclusion that declaratory relief would be available in this case.
 
 
 13
 The remedy of declaratory judgment is only available "[i]n a case of actual controversy...." 28 U.S.C. Sec. 2201. In determining whether Schepp is entitled to declaratory relief, we look beyond the initial "controversy" which may have existed at one time; rather, we must decide "whether the facts alleged, under all the circumstances, show that there is a substantial controversy ... of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) (emphasis added); see Weinstein v. Bradford, 423 U.S. 147, 148, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (Former inmate was not entitled to declaratory relief on his claim that he was entitled to due process in connection with parole eligibility proceedings; his subsequent parole and eventual release from supervision mooted the controversy so that "[f]rom [the] date [of his complete release] it [was] plain that respondent can have no interest whatever in the procedures followed by [the state] in granting parole."); Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969) (The test is not whether a case or controversy may have existed at one time; "[t]he proper inquiry [is] whether a 'controversy' requisite to relief under the Declaratory Judgment Act exist[s] at the time of the hearing [on the claim for declaratory judgment]."); Rex v. Owens ex rel. Oklahoma, 585 F.2d 432, 435 (10th Cir.1978).
 
 
 14
 On July 7, 1986, shortly after his probation had been revoked, Schepp's sentence was suspended to the time he had spent incarcerated in the Fremont County Jail awaiting the revocation hearing and he was released unconditionally. State v. Schepp, Crim. No. 3909 (Fremont County District Court, July 7, 1986) (order revoking probation and suspending sentence), R.Vol. I, Tab 27, Exhibit A. Schepp filed his claim in this case on August 19, 1987, more than a year and thirty days after his sentence was suspended. He did not seek relief against Judge Ranck until he filed a motion to amend his pleadings on December 4, 1987. At no time during this action for declaratory relief was Schepp in custody or on probation in connection with any of the proceedings before Judge Ranck. He is now discharged from further proceedings; his suspended sentence could not be revoked at the time of the district court's decision, nor can it now be revoked. Wyo.Stat. Sec. 7-13-305(c) ("revocation proceedings may be commenced at any time during the period of suspension of sentence or probation ... or within thirty (30) days thereafter...."). At the time he sought declaratory relief, Schepp risked no real threat or likelihood of further injury in connection with any of the alleged judicial or official misconduct related to probation revocation. Under these circumstances, Schepp's complaint no longer presented a "case of actual controversy" on which declaratory judgment could be granted.[3]
 
 
 15
 Schepp's claim for declaratory relief does not fall into any of the recognized exceptions to the mootness doctrine. This is not a class action; the complaint does not include as plaintiffs any persons who are presently on probation in Wyoming. Nor is Schepp's complaint "capable of repetition, yet evading review." The "evading review" doctrine is limited, in nonclass actions, to situations where both "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. at 149, 96 S.Ct. at 348; see Johansen v. City of Bartlesville, Okla., 862 F.2d 1423, 1426 (10th Cir.1988). Before Schepp could be subjected to any further revocation proceedings in Lander, he must first be tried and convicted of some criminal violation in Wyoming, then released on probation for that crime. The record reflects that at the time of his arrest, Schepp was living in Arizona, and had to be extradited to Wyoming to face probation revocation proceedings. Given the extremely remote possibility that Schepp would ever again be subjected to probation revocation proceedings before Judge Ranck, this case simply does not meet the second prong of the Weinstein test.[4]
 
 
 16
 Allowing Schepp to add Judge Ranck as a defendant would have been an exercise in futility because Judge Ranck is shielded from liability for monetary damages by absolute immunity and Schepp's claim for declaratory judgment had become moot at the time he brought this action.[5] Schepp could not prevail against Judge Ranck; therefore, the district court properly denied the motion to amend the complaint.
 
 
 17
 II. Summary Judgment for County Attorney Eichelberger
 
 
 18
 Schepp sued William Eichelberger in his official capacity as Fremont County Attorney.[6] Such an "official capacity suit ... generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." McGhee v. Draper, 639 F.2d 639, 642 (10th Cir.1981); see Brandon v. Holt, 469 U.S. 464, 470-73, 105 S.Ct. 873, 877-79, 83 L.Ed.2d 878 (1985). Schepp claims that Eichelberger violated his constitutional rights in two respects. First, Schepp claims that he was arrested, extradited, and incarcerated pursuant to an invalid bench warrant issued pursuant to an untimely petition for probation revocation. Second, Schepp contends that Eichelberger was partially responsible for denying him a prompt preliminary hearing on probable cause for the probation revocation. See Appellant's Opening Brief at 27. These allegations, inasmuch as they seek relief against Fremont County, are merely extensions of Schepp's complaint against the County itself which we discuss below. The complaint as it relates to Eichelberger therefore fails for the same reasons that his complaint against the County must fail.
 
 III. Summary Judgment for Fremont County
 
 19
 On appeal, this Court is "free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." Griess v. Colorado, 841 F.2d 1042, 1047 (10th Cir.1988) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987)). We will therefore affirm the district court's grant of summary judgment if it appears from the pleadings and the affidavits that no genuine issue exists as to any material fact, and that the defendants are entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 20
 Although Schepp's claim for declaratory judgment is moot, as discussed above, Schepp contends that Fremont County is liable for money damages under 42 U.S.C. Sec. 1983 for at least some of the harm he suffered. Specifically, Schepp claims two deficiencies which allegedly render the county legally responsible.[7] First, he alleges that "Fremont County failed to instruct, supervise, and control the Defendants named herein and ... its [other] employees...." Amended Complaint, R.Vol. I at Tab 21a, pp. 7-8. Second, Schepp claims that "Fremont County apparently has an official policy or custom of detaining probation violators in the Fremont County Jail without providing an opportunity for a prompt initial hearing." Id. at Tab 21a, p. 8. We address each of these claims below.
 
 
 21
 A municipality is not liable under 42 U.S.C. Sec. 1983 for the actions of its employees on a theory of respondeat superior or vicarious liability. Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978). The Supreme Court has held that a municipality may be held responsible under Sec. 1983 for inadequate supervision and training of its employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come in contact." City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Such deliberate indifference arises where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." Id. 109 S.Ct. at 1205; Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir.1990). No such obvious likelihood of constitutional deprivation existed in the case of Fremont County's probation revocation procedures.
 
 
 22
 Schepp specifically alleges that William Eichelberger and other Fremont County personnel were inadequately trained and supervised with respect to the untimely filing of the probation revocation petition.[8] At the time of Schepp's arrest and extradition, Wyoming law provided: "At any time during the period of ... probation, the court may issue a warrant and cause the defendant to be arrested for violating any of the conditions of probation...." Wyo.Stat. Sec. 7-13-304 (1977) (amended 1987). This statutory provision had not been interpreted by any court prior to the time of Schepp's arrest; therefore, a question existed as to whether or not a petition to revoke probation for a violation occurring during the period of probation must be filed during the formal probationary period or if such a petition could be filed within a reasonable time thereafter.
 
 
 23
 After Schepp's probation revocation proceedings were concluded, the Wyoming Supreme Court decided the case of Lackey v. State, 731 P.2d 565 (Wyo.1987). With two of the five justices dissenting, the court stated that although "this section obviously does not require that revocation proceedings be completed within the probationary period, it does require that such proceedings be initiated during the period." Id. at 568. Under the interpretation adopted by the Lackey court, Schepp's revocation petition was filed several days late because his one-year probation had expired before the filing.
 
 
 24
 Even if it could be said that county employees were inadequately trained and supervised so that Schepp's revocation proceedings were commenced several days late, the state law requirement established by the Lackey decision was not made clear until five years later. Accordingly, there was no apparent need, at the time of Schepp's revocation, to instruct the employees in the Fremont County Attorney's office to commence revocation proceedings prior to the end of formal probation.
 
 
 25
 Failure to commence revocation proceedings before the end of formal probation does not, in itself, create a significant likelihood that probationers' constitutional rights will be violated. In Fremont County's case, allowing the filing of revocation petitions within a short time after the end of probation was reasonable in light of the practicalities involved. Such an approach was not clearly proscribed by the uninterpreted statute. Indeed, one Wyoming Supreme Court Justice urged just such a statutory interpretation in a dissent to Lackey. 731 P.2d at 569 (Brown, C.J., dissenting) ("The rule [adopted by the majority] in this case grants a probationer a license to run amok during the waning days of his probation."). The Wyoming Legislature, in what could be deemed a negative reaction to the Lackey decision, amended the relevant statute that same year to explicitly allow revocation proceedings to commence within thirty days after the end of the probation period. See Wyo.Stat. Sec. 7-13-305.
 
 
 26
 Many states provide that revocation proceedings may commence within a reasonable time after the probation period terminates. These schemes have not been held to violate probationers' constitutional due process rights. See, e.g., Galaktionoff v. State, 733 P.2d 628 (Alaska Ct.App.1987):
 
 
 27
 "The trial court had jurisdiction to revoke [probationer's] probation ... despite the fact that formal probation terminated prior to the filing of the petition to revoke probation.... [O]ur probation statutes ... are modeled on the federal law.... The federal cases interpreting the federal statute have uniformly [held that] a court can issue a warrant and revoke an individual's probation at any time during the maximum five-year probationary period permitted by 18 U.S.C. Sec. 3651 so long as the acts justifying the revocation occur within a probationer's formal period of probation."
 
 
 28
 Id. at 630 (citing, e.g., Gammarano v. United States, 732 F.2d 273, 277 (2d Cir.1984); United States v. Hill, 719 F.2d 1402, 1404 (9th Cir.1983); United States v. O'Quinn, 689 F.2d 1359, 1360 (11th Cir.1982); United States v. Blunt, 680 F.2d 1216, 1218-19 (8th Cir.1982); United States v. Swanson, 454 F.2d 1263, 1265 (7th Cir.1972)); see also State v. Berry, 413 A.2d 557 (Md.1980); State v. White, 193 Neb. 93, 225 N.W.2d 426 (1975).
 
 
 29
 We cannot conclude that Fremont County showed "deliberate indifference" in failing to correctly anticipate the Wyoming Supreme Court's interpretation of the procedural rule at issue here. No real likelihood existed that such a failure would in any way violate probationers' constitutional rights. Except for his concerns about the lack of a preliminary hearing, which we address below, Schepp does not identify any other improper behavior by Fremont County personnel or any other basis for assigning liability to the county for inadequate supervision or training. It appears clear from the pleadings and the attached affidavits of county officials that the county attorney and the sheriff both acted properly in all other respects. Schepp's claim of "inadequate training" must fail.
 
 
 30
 Schepp's other allegation against the County, that its policy permitted the detention of probationers without a preliminary hearing, has no merit because Schepp was not deprived of any constitutional right by virtue of his not receiving such a hearing. The fundamental purpose of a preliminary hearing in probation revocation proceedings is to determine whether probable cause exists to believe that the probationer has violated a condition of the probation. See Gagnon v. Scarpelli, 411 U.S. 778, 781-82, 93 S.Ct. 1756, 1759-60, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 485, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972). Although a preliminary probable cause hearing is generally required to satisfy a probationer's constitutional right to due process, such a hearing was entirely unnecessary in this case because the evidence of probable cause was already before the state court judge at the time Schepp was arrested and extradited.
 
 
 31
 The sole basis for revoking Schepp's probation was his failure to make full restitution by remitting the amount of unpaid checks with the state court. All the evidence relating to Schepp's failure to pay this amount appeared in Judge Ranck's own files, and was known to him at the time the bench warrant for Schepp's arrest issued. Judge Ranck was already fully aware of all the relevant circumstances, including Schepp's subsequent efforts to evade arrest and extradition following revocation. A hearing before the same judge who had custody of all the files relevant to the probation violation would serve no useful purpose. In these limited circumstances, where probable cause was evident and obvious to the judge who issued the arrest warrant and conducted the revocation hearing, due process does not require the empty formality of a preliminary hearing to determine probable cause. See Chilembwe v. Wyrick, 574 F.2d 985, 987 (8th Cir.1978) (per curiam) ("[W]here obtaining permission before leaving the state is a condition of parole, a parolee's presence in another state without such permission is sufficient probable cause to believe he [violated] his parole such that a preliminary hearing is not required.... [T]here are no differences relevant to due process between parole revocation and probation revocation.") (citing Stidham v. Wyrick, 567 F.2d 836 (8th Cir.1977)).
 
 
 32
 The other deprivations Schepp complains of, denial of bail pending the revocation hearing, and denial of appointed counsel, were obviously the sole responsibility of Judge Ranck, and cannot be attributed in any way to Fremont County. Schepp's claim against Fremont County was properly dismissed.
 
 CONCLUSION
 
 33
 Schepp cannot seek injunctive or declaratory relief for any damages arising out of the probation revocation proceedings because such claims for prospective relief are now moot. Schepp cannot recover money damages from Judge Ranck because he is absolutely immune from damages arising from his judicial acts. Finally, Schepp cannot recover from Fremont County for its failure to correctly anticipate a disputed state supreme court interpretation of an ambiguous procedural requirement, or for the absence of a preliminary hearing which would have been no more than a meaningless formality. The district court's order is, in its entirety, AFFIRMED.
 
 
 
 *
 Honorable Ralph G. Thompson, Chief Judge, United States District Court for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 Schepp does not appeal that portion of the district court's order granting summary judgment to the County Sheriff, and now "waives all potential claims against the Sheriff." Appellant's Opening Brief at viii
 
 
 [2]
 Approximately one week before the scheduled revocation hearing the Fremont County Attorney contacted another state district court judge to ensure that Schepp's case was dealt with as expeditiously as possible. The county attorney was informed that Judge Ranck, as Senior Judge of that judicial district, intended to retain Schepp's case for himself. Affidavit of William V. Eichelberger, R.Vol. I at Tab 27, pp. 4-5
 
 
 [3]
 Schepp is not entitled to declaratory relief even if he has suffered uncompensated damage as the result any impropriety in the revocation proceedings; such declaratory relief would in no way redress those past injuries. See Northern Virginia Women's Med. Center v. Balch, 617 F.2d 1045, 1049 (4th Cir.1980) (County judges who dismissed actions against anti-abortion demonstrators for trespassing on an abortion clinic's property were shielded from liability by absolute immunity; the clinic's requested relief, a declaratory judgment pronouncing the dismissals erroneous, would serve no purpose toward redressing its injury, and declaratory judgment was denied.)
 
 
 [4]
 Schepp argues that he is entitled to declaratory judgment merely as "guidance" to Judge Ranck or the other defendants involved here. This court has previously rejected the claim that declaratory judgment is appropriate as "guidance" for future cases involving unsettled questions of constitutional law:
 "As to a recurrence of this ... dispute, there is no showing of a 'reasonable expectation' or 'demonstrated probability' that the same controversy will recur involving the same plaintiffs as the complaining parties. 'The Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the test stated in Weinstein.' Accordingly we hold that the claim for declaratory and injunctive relief under [42 U.S.C. Sec. 1983] is moot."
 Johansen v. City of Bartlesville, Okla., 862 F.2d at 1426-27 (quoting Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982)).
 
 
 [5]
 Because Schepp's claim for declaratory relief is moot, we do not reach the merits of the action against Judge Ranck under the proposed amendment to the complaint. We note in passing, however, that the allegations against Judge Ranck appear to raise very questionable constitutional claims. In our discussion below of his allegations against Fremont County, we conclude that Schepp's constitutional rights were not violated by the lack of a preliminary probation revocation hearing. Schepp's claims concerning denial of bail and lack of appointed counsel are equally suspect. See generally Gagnon v. Scarpelli, 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973) ("[T]he presence and participation of counsel will ... be both undesirable and constitutionally unnecessary in most revocation hearings."); Faheem-El v. Klincar, 841 F.2d 712, 719 (7th Cir.1988) (finding no absolute right to bail pending parole revocation hearing)
 
 
 [6]
 To the extent that Schepp's complaint can be read to state a claim against Eichelberger personally, as a prosecutor acting within the scope of his prosecutorial duties, Eichelberger is shielded from personal liability by absolute immunity. See Imbler v. Pachtman, 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976); England v. Hendricks, 880 F.2d 281, 285 (10th Cir.1989)
 
 
 [7]
 Schepp did not allege in his amended complaint that William Eichelberger or Travis Moffat, the Deputy County Attorney who filed the petition for revocation, acted as the "final policymaking authority" of the municipality in the area of probation revocation petitions. Pembaur v. Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality opinion). Indeed, Schepp alleged that Eichelberger was "acting for and under the direction and control of Fremont County." R.Vol. I at Tab 21a, p. 2. Nor did Schepp contend that Fremont County had an established policy concerning the timing of revocation petitions or that it "officially sanctioned or ordered" the untimely filing of the petition in this case. Id. at 480, 106 S.Ct. at 1298
 On appeal, Schepp does not appear to assert either of these theories of municipal liability. Indeed, Schepp would be precluded from raising these theories for the first time on appeal. Glass v. Pfeffer, 849 F.2d 1261, 1264 (10th Cir.1988) ("By failing to raise a ... legal theory before the district court, plaintiffs foreclosed themselves from arguing that theory on appeal [from summary judgment] or on remand, and plaintiffs' counsel cannot now rely on this theory....") (citing Denis v. Liberty Mut. Ins. Co., 791 F.2d 846, 848-49 (11th Cir.1986) ("Failure to raise [a] ... theory of relief in the first instance to the trial court generally is fatal...."); Gilbert v. Medical Economics Co., 665 F.2d 305, 310 (10th Cir.1981)). We therefore limit our discussion to the two theories of Fremont County's liability which Schepp did fairly raise below.
 
 
 [8]
 In his affidavit filed with the motion for summary judgment, Eichelberger states that he was not in fact involved with Schepp's case at the time the revocation petition was filed. Apparently, the petition was actually filed by Travis Moffat, the "Deputy County and Prosecuting Attorney for Fremont County." Amended Complaint, R.Vol. I at Tab 21a, p. 4; see Affidavit of William V. Eichelberger, R.Vol. I at Tab 27, p. 2. Schepp's complaints concerning denial of bail and failure to appoint counsel are attributable solely to Judge Ranck, who is not a county employee. These uncontroverted facts distinguish this case from those circumstances where "liability is predicated on a determination that 'the action ... implements or executes a policy statement ... or decision officially adopted and promulgated by that body's officers' ... [so that] the local government itself [rather than its employees or agents] is responsible for the [alleged] constitutional deprivation...." Owen v. City of Independence, 445 U.S. 622, 655 n. 39, 100 S.Ct. 1398, 1417 n. 39, 63 L.Ed.2d 673 (1980) (quoting Monell v. New York City Dept. of Social Serv., 436 U.S. at 691, 98 S.Ct. at 2036). Schepp's only theory of liability for the untimely filing of the revocation petition is the inadequate supervision and training of County employees