**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT WHITEWATER; JUDY
JOHNSON, as next friend and parent
of Bryan Johnson, a minor; BOADY
JOHNSON; CARRIE BAKER, as
parent and next friend of Boady Baker,
a minor child,

        Plaintiffs - Appellants,

v.

DELENA GOSS, in her official
capacity,

        Defendant - Appellee.

No. 05-7081

E. D. Oklahoma

(D.C. No. 04-CV-2-P)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **PORFILIO**, and **HARTZ**, Circuit Judges.

Plaintiffs Robert Whitewater, Judy Johnson, Bryan Johnson, Boady

Johnson, Carrie Baker, and Boady Baker filed suit in the United States District

Court for the Eastern District of Oklahoma under 42 U.S.C. § 1983, alleging

violations of their constitutional rights arising out of the search of their home by

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the Special Weapons and Tactics (SWAT) Team of the Cherokee County Sheriff's Department. The defendants were Sheriff Delena Goss, the Cherokee County Board of Commissioners, and several officers and employees of the Sheriff's Department. Plaintiffs voluntarily dismissed all their claims except claims against Sheriff Goss in her official capacity. The district court granted summary judgment on those claims. Plaintiffs appealed. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.    BACKGROUND

On April 24, 2002, the SWAT team executed a search warrant for Plaintiffs' house. Sheriff Goss made the decision to use the SWAT team but did not participate in the initial entry. The six Plaintiffs were in the house when the SWAT team entered. They entered with guns drawn, secured the premises, and escorted Plaintiffs outside while they searched the house. According to Plaintiffs, 12-year-old Bryan Johnson was held at gunpoint for at least 15 minutes during the intrusion. After the search Robert Whitewater, Judy Johnson, and Boady Johnson were arrested.

Plaintiffs contend that two of their claims should have survived summary judgment: (1) the Fourth Amendment was violated by Sheriff Goss's decision to employ the SWAT team without first undertaking a reasonableness analysis, and

(2) the Fourth Amendment was violated when Bryan Johnson was held at gunpoint for 15 minutes.

## II.   DISCUSSION

"We review the district court's grant of summary judgment de novo, applying the same legal standard that should have been used by the district court." *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (internal quotation marks omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Plaintiffs' suit against Sheriff Goss in her official capacity is equivalent to a suit against Cherokee County (the County) itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Therefore, we will henceforth refer to the claim against the Sheriff as a claim against the County. Liability can be imposed on the County only if (1) a constitutional violation occurred, *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam), and (2) the violation was caused by a government policy or custom, s*ee Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A government policy or custom may be

manifested either in the acts of "its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy." *Id*. at 694. It is not disputed that

the decisions of Sheriff Goss represent official policy. *Cf. Bd. of County

Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) (sheriff's hiring decisions were

official policy).

Plaintiffs contend that liability here can be based on a County policy

regarding the use of firearms in executing a search and on the failure to train and

supervise the SWAT team. The Supreme Court in *City of Canton v. Harris*, 489

U.S. 378, 388-89 (1989), imposed strict limitations on when a municipality can be

liable under § 1983 for lapses in training:

> We hold today that the inadequacy of police training may serve as the
> basis for § 1983 liability only where the failure to train amounts to
> deliberate indifference to the rights of persons with whom the police
> come into contact. This rule is most consistent with our admonition .
> . . that a municipality can be liable under § 1983 only where its
> policies are the moving force behind the constitutional violation.
> Only where a municipality's failure to train its employees in a
> relevant respect evidences a deliberate indifference to the rights of
> its inhabitants can such a shortcoming be properly thought of as a
> city policy or custom that is actionable under § 1983. . . . Only
> where a failure to train reflects a deliberate or conscious choice by a
> municipality—a policy as defined by our prior cases—can a city be
> liable for such a failure under § 1983.

(internal citations, quotation marks, and brackets omitted). We treat allegations

of failure to supervise (which often may be indistinguishable from failure to train)

the same way. *See Medina v. City & County of Denver*, 960 F.2d 1493, 1500

-4-

(10th Cir. 1992); *Schepp v. Fremont County*, 900 F.2d 1448, 1454 (10th Cir. 1990); *Meade v. Grubbs*, 841 F.2d 1512, 1527-28 (10th Cir. 1988).

We hold that Plaintiffs' SWAT-team claim fails because use of the SWAT team did not in itself violate Plaintiffs' constitutional rights. As for the claim that Bryan Johnson was improperly held at gunpoint, we need not decide whether this was a constitutional violation, because any violation was not caused by a County policy or custom.

### 1. ___Use of SWAT Team

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment requires examination of not only whether a particular search or seizure was justified, but also whether it was conducted in a reasonable manner. *See Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985). In *Holland v. Harrington*, 268 F.3d 1179 (10th Cir. 2001), we said that "Fourth Amendment scrutiny extends . . . to the decision to employ a SWAT team to make an arrest . . . and to conduct a search of a residence," *id.* at 1189, but that such a decision was not unreasonable unless the decisionmakers knew "that the SWAT team would use excessive force, intending to cause harm to any person, or . . . instructed the SWAT team to use excessive force while conducting the . . . raid," *id.* at 1191.

Plaintiffs contend that Sheriff Goss unreasonably decided to use the SWAT team under a blanket policy to employ the team for all searches in narcotics cases. But they have not presented any evidence that Sheriff Goss knew the team would use excessive force, intended to cause harm, or instructed the team to use excessive force. Without such evidence the mere decision to deploy a SWAT team, even under a blanket rule, does not offend the Fourth Amendment. *Cf. Richards v. Wisconsin*, 520 U.S. 385, 395 (1997) (rejecting a blanket exception to the knock-and-announce rule in felony drug investigations, but concluding that the particular no-knock entry at issue was justified under the Fourth Amendment); *Heller*, 475 U.S. at 799 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.").

## 2. Holding Minor at Gunpoint

Plaintiffs claim that the execution of the search was unreasonable under the Fourth Amendment because a member of the SWAT team held Bryan Johnson, a minor, at gunpoint for at least 15 minutes. But even if this action occurred and was unreasonable, Plaintiffs have not shown that the County bears liability.

First, Plaintiffs claim that the County is liable because of a departmental policy requiring SWAT-team members to secure at gunpoint all occupants,

including juveniles, until the residence has been secured. They conceded at oral argument that this policy by itself is not unconstitutional, but asserted that the policy caused the violation because Bryan Johnson was held at gunpoint for an unreasonable length of time. We disagree. A commonsense interpretation of this policy would not authorize an officer to hold a 12-year-old at gunpoint for 15 minutes without reasonable grounds to do so. Plaintiffs have not shown a "direct causal link" between the policy and the alleged constitutional deprivation. *Brown*, 520 U.S. at 404.

Next, Plaintiffs claim that the County can be held liable for failure to train and supervise the SWAT-team members. Plaintiffs assert that Sheriff Goss did not adequately train the SWAT-team members in SWAT tactics and procedures; was not personally involved in drug investigations; did not require the deputies to inform her of the progress of their investigations; did not establish a system for her deputies to exchange information; allowed her main drug investigator to keep "track of his investigations from memory" alone, Aplt. Br. at 38; did not review the Whitewater search warrant; did not keep track of the SWAT team's activities; and did not require the deputies to document their activities during the execution of a warrant.

These claims fail because Plaintiffs have not shown that Sheriff Goss acted with the requisite deliberate indifference—a necessary element to a failure-to-train or failure-to-supervise claim. As we recently stated:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003). It was undisputed that "the people who were involved in the search were fully trained by the Council on Law Enforcement Education and Training ('CLEET') and that they had all undergone further continual training on various issues including SWAT training." Aplee. App. at 458 (Order of June 15, 2005 at 11). The district court found no evidence of deliberate indifference on the part of the County in failing to train the team members. Plaintiffs have pointed to no evidence that Sheriff Goss was put on notice by information that the SWAT team had employed excessive force against children on prior occasions or that such abuse is to be expected absent some training not given to SWAT-team members. Plaintiffs' bald allegations of

training failures contrast with the evidence presented in *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997), in which we reversed a grant of summary judgment on such a claim. In *Allen* the plaintiffs had presented expert testimony that "the training was out of synch with the entire United States in terms of what police are being trained to do." *Id.* at 843 (internal quotation marks omitted). The evidence here establishes only that the SWAT-team members *were* trained, and no evidence was presented that the training was deficient under prevailing norms. Nor are the supervisory failures referenced by Plaintiffs such that their "highly predictable or plainly obvious consequence" would be holding a 12-year-old at gunpoint without justification. *Carr*, 337 F.3d at 1229.

## III. CONCLUSION

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge

05-7081, Whitewater v. Goss
**LUCERO, J.,** dissenting.

My respected colleagues use a seemingly straightforward order and judgment in resolving this case, yet, because the Majority's judgment fails to adhere to the established precedent of this circuit, I must respectfully dissent.

As daylight broke on April 24, 2002, thirteen members of the Cherokee County Sheriff's Department SWAT team – guns drawn and dressed in full camouflage – stormed the residence of sixty-one-year old Robert Whitewater. During the raid, all occupants of the home, including a twelve-year old child, were secured at gunpoint and led outside. Although most of the Majority's reasoning is sound, I cannot agree with its conclusion that Sheriff Goss's decision to deploy a SWAT team to conduct a search of the Whitewater residence was reasonable, and therefore dissent as to that part of the opinion.

My colleagues recognize that in Holland v. Harrington, 268 F.3d 1179 (10th Cir. 2001), we held that the Fourth Amendment applies to the decision to deploy a SWAT team. However, if precedential, the Majority would reduce Holland's holding to the proposition that "unless the decisionmakers knew 'that the SWAT team would use excessive force, intending to cause harm to any person, or . . . instructed the SWAT team to use excessive force while conducting the . . . raid" such a decision is reasonable under the Fourth Amendment. Maj. Op. at 5 (citing Holland v. Harrington, 268 F.3d at 1189).

Such a reading of <u>Holland</u> impermissibly clashes with the clear text of the decision. In <u>Holland</u>, we stated that use of a SWAT team to execute a search or seizure "necessarily involves . . . an overwhelming show of force – force far greater than that normally applied in police encounters with citizens." <u>Id.</u> at 1190. Accordingly, the <u>Holland</u> panel had no difficulty in concluding that the initial <u>decision</u> to deploy a SWAT team must be reasonable under the Fourth Amendment. <u>Id.</u> It adopted the balancing test established by the Supreme Court in <u>Tennessee v. Garner</u>, 471 U.S. 1 (1985), to judge the reasonableness of the decision, "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." <u>Id.</u> (citing <u>Garner</u>, 471 U.S. at 8). Under that test, the <u>Holland</u> court concluded that the decision to deploy the SWAT team was reasonable because: (1) the officers knew that the individual that owned the property had a violent criminal history; (2) firearms were suspected to be located at the property; (3) the officers knew that other residents of the property had a history of violence; (4) although unaware of exactly how many residents were located at the property, the officers suspected at least 7-8 adults resided there; and (5) the use of a SWAT team was based on the officers' goal to effectuate a quick and safe execution of the search warrant and prevent the destruction of evidence. <u>Id.</u> at 1191.

Having analyzed whether the initial decision to deploy a SWAT team was reasonable, the Holland panel turned to the plaintiffs' alternative theory that the decision to deploy the SWAT team was unreasonable because SWAT team members actually used excessive force while executing the search. Id. Our previous decision in Holland specifically noted that this second theory presented "another matter." Id. Our circuit then held that defendants as supervisors can not be held liable for the actions of their deputies based on their decision to deploy the SWAT team because they did not know "that the SWAT team would use excessive force, intending to cause harm to any person, or . . . instructed the SWAT team to use excessive force while conducting the . . . raid." Id. at 1191.

Under Holland's balancing test, Sheriff Goss's decision to deploy the SWAT team to execute the search of Whitewater's residence was plainly unreasonable. There is no evidence that Whitewater – whose only prior brushes with the law consisted of public drunkeness convictions – presented any risk of violence. Nor did Sheriff Goss have any reason to believe that the property itself or its other occupants posed any threat to officer safety. The only identified basis for the use of the SWAT team was the potential presence of marijuana at the Whitewater residence.

Sheriff Goss, who made the final decision, testified in her deposition that she could not think of any situation involving drugs of any kind where she would

not use the SWAT team to execute the warrant.[1]  Yet, the likelihood that narcotics are present at a location does not by itself create a significant risk of violence to justify the decision to deploy a SWAT team under Holland.  See also Richards v. Wisconsin, 520 U.S. 385 (1997) (rejecting a categorical exception to the knock-and-announce requirement for searches involving narcotics because "not every drug investigation" will "pose special risks to officer safety and the preservation of evidence"); United States v. Basham, 268 F.3d 1199, 1205-1206 (10th Cir. 2001) (rejecting the argument that "because a person is involved in the drug trade, that person is likely to be dangerous or possess firearms"); United States v. Myers, 106 F.3d 936, 940 (10th Cir. 1997) (rejecting the routine use of flash-bang devices when executing search warrants, but finding a particular use of a flash-bang device was justified because the suspect had a lengthy history of criminal activity, including a conviction for fire-bombing).

Through the present order and judgment, the Majority's purported limitation of Holland's proscription, that disallows the blanket use of SWAT teams to execute search and arrest warrants would scuttle Holland.  Allowance of

_____

[1] Because this case was brought against the Sheriff in her official capacity, the plaintiffs must also prove that the constitutional violation was caused by government policy or custom.  Unquestionably, the decision to deploy the SWAT team to execute the search of the Whitewater residence was the result of a policy of the Cherokee County Sheriff's Department.  Bryan Swim, the SWAT team leader, testified during his deposition that "it was determined that the SWAT team would be used just pretty much on every search warrant that was executed."

-4-

the use of SWAT teams in virtually every case involving any quantity of drugs whatsoever is unacceptable under the clearly established precedent of our court and of the Supreme Court. See In re Smith, 10 F.3d 723, 724 (10th Cir. 1993) ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."). I would reverse the district court's decision to grant summary judgment in favor of the County.