Robert E. **FELKER**, Plaintiff,

v.

E. David **CHRISTINE**, Defendant.

Civ. No. 91–730.

United States District Court,
M.D. Pennsylvania.

April 22, 1992.

MEMORANDUM

NEALON, District Judge.

On May 31, 1991, the plaintiff, while on probation, filed the above 42 U.S.C. § 1983 civil rights complaint alleging a malicious prosecution, an abuse of process and both procedural and substantive due process violations caused by the defendant district attorney's participation in a probation revocation proceeding. The defendant has moved for summary judgment asserting that the plaintiff's action is barred by the statute of limitations; the defendant is protected from suit by qualified immunity; the plaintiff has failed to adequately support his claims of malicious prosecution and abuse of process; and, finally, the record fails to establish any procedural or substantive due process violations. Upon a careful review of the present record, the court concludes that, while the action is not time-barred as the defendant suggests, the defendant is entitled to qualified immunity, and, in the alternative, the plaintiff cannot adequately support his claims. Thus, summary judgment in favor of the defendant is appropriate.

I.

The following facts are undisputed unless otherwise noted. Robert E. Felker (Felker) was convicted in a Pennsylvania state court on March 17, 1988, of offenses involving the hit-and-run death of a pedestrian and reckless driving. He was sentenced on July 20, 1988, to pay a fine of $2,500.00, to perform 250 hours of community service, and placed on probation for one year. Robert Angradi (Angradi) was Felker's assigned probation officer. On July 21, 1988, Felker, at the request of Angradi, signed a form acknowledging the Rules and Regulations of the Probation and Parole Departments (Rules and Regulations form).

Felker appealed his conviction to the Pennsylvania Superior Court and sought a stay of sentence from the trial court. The trial court denied the stay. On September 29, 1988, while Felker's appeal was pending, Angradi directed Felker, in writing, to contact him by October 3, 1988, to sign the

William H. Robinson, Jr., Joseph G. Murray, Stroudsburg, Pa., for plaintiff.

Susan Ellis Wild, Post & Schell, Allentown, Pa., for defendant.

Rules and Regulations form [1] and to commence his community service. Angradi advised Felker that any failure to comply with the request would result in Angradi's filing a petition for violation for probation. In response, Felker's counsel requested the Superior Court to stay his sentence until the court resolved his appeal. On October 13, 1988, the court granted the stay.

On March 20, 1989, the Superior Court denied Felker's appeal. The plaintiff then filed a petition for reargument on April 3, 1989. On April 4 and 13, 1989, Angradi again apprised Felker of his responsibility to sign the Rules and Regulations form and repeated his threat to file a petition for violation of probation. The plaintiff's counsel informed Angradi, by letter dated April 17, 1989, of the pending petition for reargument and, while not mentioning that the appeal constituted an automatic stay, advised Angradi to contact the Monroe County District Attorney's Office. However, there was no communication attempted between plaintiff's counsel and the district attorney's office.

The defendant, E. David Christine (Christine), had been the District Attorney for Monroe County since January 5, 1988, and, prior to his election, had served as an assistant district attorney since 1982. He was contacted by Angradi concerning the propriety of filing the petition and on May 2, 1989, after receiving the defendant's approval, Angradi filed a petition to show cause why probation should not be revoked. The basis for the petition was the plaintiff's alleged failure to sign the Rules and Regulations form as requested by Angradi. On May 31, 1989, before the hearing commenced, Christine's office stated to the court that, because of the pending appeal, it could not go forward with the petition, and the court dismissed the petition.

On October 1, 1990, Felker filed this complaint pursuant to 42 U.S.C. § 1983. *See*

document 1 of record. Felker alleged that Christine's actions in prosecuting the petition for revocation of probation constituted a malicious prosecution, an abuse of process and violations of both procedural and substantive due process. The defendant moved for summary judgment asserting that the defendant was entitled to qualified immunity for his actions pertaining to the hearing. At a December 17, 1991, conference in chambers, the court directed the parties to rebrief the issues to include the statute of limitations, the elements of malicious prosecution and abuse of process and, finally, the alleged procedural or substantive due process violations.[2] The defendant timely complied with the court's directive and filed a second motion for summary judgment. *See* documents 16–18 of record. The plaintiff has replied in opposition, *see* document 19 of record, and the motion is now ripe for disposition. The court will address the issues *seriatim.*

## II.

"In order to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Felton v. Southeastern Pennsylvania Transportation Authority,* 952 F.2d 59, 60 (3rd Cir. 1991) (citations omitted). In determining what is a genuine issue of material fact, the court "must look to the governing substantive law and what 'disputes over facts [would] affect the outcome of the suit' under that law." *Cliffs–Neddrill Turnkey Int'l–Oranjestad v. M/T Rich Duke,* 947 F.2d 83, 87 (3rd Cir.1991) (citation omitted). The evidence submitted must be viewed in a light most favorable to the non-moving party, *O'Donnell v. United States,* 891 F.2d 1079, 1082 (3rd Cir.1989) (citation omitted), and "[a]ny 'unexplained gaps' in materials submitted by the moving party, if

---

**1.** Inasmuch as Felker had previously executed the Rules and Regulations form, the reason for this request and the subsequent requests by Angradi is not clear from the record.

**2.** In the defendant's first motion for summary judgment, he argued that he was entitled to

qualified immunity. Although the court concludes that the defense of qualified immunity is available to the defendant, nevertheless, the merits of the plaintiff's claims will also be addressed.

pertinent to material issues of fact, justify denial of a motion for summary judgment." *Id.* (citation omitted). In addition, the Supreme Court in *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), noted that the " 'moving party is entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23, 106 S.Ct. at 2552–53.

### III.

■ To determine whether a claim of malicious prosecution, abuse of process or a claim of a deprivation of both procedural and substantive due process arising out of the same circumstances is time-barred, a district court must look to the analogous state law statute of limitations. *Rohena v. Dept. of Treasury*, 665 F.Supp. 102 (D.Puerto Rico 1987). Pennsylvania would apply a two-year statute of limitations to the present action. See 42 Pa.C.S.A. § 5524 (Purdon Supp.1989). However, "the issue of when a cause of action accrues is a matter of federal law." *Rohena*, 665 F.Supp. at 102.

■ In *Deary v. Three Un–Named Police Officers*, 746 F.2d 185 (1984), the Third Circuit Court of Appeals held that a cause of action for a claim of malicious prosecution accrues when the criminal proceedings are dismissed. *Id.* at 194. *Accord Rose v. Bartle*, 871 F.2d 331, 352 (3rd Cir.1989). Similarly, in a case such as here, the date that the proceedings were dismissed started the running of the two-year limitations period for the plaintiff's other claims. *See generally Deary*, 746 F.2d at 197 n. 16.

In applying the law to the present case, it is clear that the plaintiff's claims accrued on May 31, 1989, the date that the petition for revocation was dismissed by the trial court. On that date the petition for revocation was decided in the plaintiff's favor, *see* discussion *ante* on that element of the tort, and the last element of the tort, allegedly, had been completed. Thus, his claims are not time-barred as the defendant suggests and the court will address the remaining issues.

### IV.

■ The defendant, as District Attorney for Monroe County, has asserted the affirmative defense of qualified immunity. It cannot be disputed that a state prosecutor is absolutely immune from liability under § 1983 for his role in "initiating a prosecution and in presenting the State's case," *see Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976), insofar as his conduct is "intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S.Ct. at 995. However, a state prosecutor's immunity from suit is limited in situations where he gives advice on the propriety of investigative police conduct. *See Burns v. Reed*, —— U.S. ——, 111 S.Ct. 1934, 1944–45, 114 L.Ed.2d 547 (1991). In *Burns*, the Supreme Court held that a prosecutor who dispenses legal advice to police cannot avail himself of absolute immunity but may, under appropriate circumstances, be eligible for qualified immunity. *Id.*

The standard for determining whether an official is entitled to qualified immunity is set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), in which the court stated:

We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known.

*Id.* at 817, 818, 102 S.Ct. at 2737, 2738. Furthermore:

"The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton* [483 U.S. 635], 107 S.Ct. 3034 [97 L.Ed.2d 523] (1987). In exploring whether a right is clearly established, we must find "some but not precise correspondence" with applicable precedents. *People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 144

(3rd Cir.1984). "Although officials need not 'predic[t]' the future course of constitutional law,' ... they are required to relate established law to analogous factual settings." *Id.* (citation omitted). *Prisco v. Dept. of Justice*, 851 F.2d 93, 96, 97 (3rd Cir.1988) (attorney general not entitled to qualified immunity with respect to claim that a father's due process rights were violated when his child was placed in the federal witness protection program without notice to the father as father's right to a hearing was clearly established when the child was placed in the program).

■ Here, defendant Christine provided Angradi with advice on whether to proceed with the petition for probation revocation, which coincides with the advice dispensed by the district attorney in *Burns.* While the court in *Burns* concluded that the absolute immunity would not be available to district attorneys who dispense legal advise on investigative matters, it declined to address the issue of qualified immunity.

In *Schepp v. Fremont County, Wyo.,* 900 F.2d 1448 (10th Cir.1990), the plaintiff in a similar action sued the county district attorney for filing a petition for revocation of probation under an ambiguous section of the Wyoming criminal code which had not, at the time of the filing of the petition, been interpreted by the Wyoming Supreme Court. Subsequent to the hearing, the Wyoming Supreme Court's interpretation of the statute in *Lackey v. State,* 731 P.2d 565 (Wyo.1987), indicated that, as applied to Schepp, the petition for probation revocation had been, in effect, untimely filed. The plaintiff then filed a § 1983 civil rights complaint against the prosecutor, *inter alia,* on "grounds of reckless conduct exhibited by a callous indifference to Mr. Schepp's constitutionally protected rights" for the untimely filing of the probation revocation petition. *See Schepp v. Fremont County, Wyo.,* 685 F.Supp. 1200, 1203 (D.Wyo.1988).

On appeal, the court noted:

Failure to commence revocation proceedings before the end of formal probation does not, in itself, create a significant likelihood that probationers' constitutional rights will be violated. In Fremont County's case, allowing the filing of the revocation petitions within a short time after the end of probation was reasonable in light of the practicalities involved. Such an approach was not clearly proscribed by the uninterpreted statute.

*Schepp,* 900 F.2d at 1455. Although the court acknowledges the factual distinctions between *Schepp* and the present case, the above quoted language of the Tenth Circuit Court of Appeals does suggest that a failure in the process of probation revocation does not necessarily give rise to a constitutional deprivation. Moreover, as the court noted in the main text of this Memorandum, no constitutional deprivation can be found with regard to the actions taken by the defendant. Absent a constitutional violation, qualified immunity would be available to the defendant even had the plaintiff proved the defendant's alleged violation of Rule 4011 of the Pennsylvania Rules of Criminal Procedure. 42 Pa. Cons.Stat.Ann. Rule 4011 (1989).[3] Accordingly, because

---

**3.** The plaintiff relies heavily on the "automatic stay provision" of Rule 4011 as the basis of the defendant's alleged statutory violation. Rule 4011 provides that:

Unless bail is revoked, the bond shall be valid until full and final disposition of the case, including all avenues of direct appeal to the Supreme Court of Pennsylvania and to the Supreme Court of the United States by writ of certiorari or appeal.

42 Pa. Cons.Stat.Ann.Rule 4011 (1989). He claims that the fact that he had posted bail should have relieved him from all contact with the issuing court until the full and final disposition of his appeal. However, Rule 4013, Conditions of Bail, appears to contradict the plaintiff's position. That section reads in pertinent part:

When a person is admitted to bail, the conditions of the bail bond shall be that such person will:

(a) Appear before the issuing authority or court at all times required until full and final disposition of the case;

(b) Submit to all orders and process of the issuing authority or court; ...

42 Pa. Cons.Stat.Ann.Rule 4013 (1989). Consequently, release on bail is not unconditional but is subject to appearance before the court and submissions to court orders. The gravamen of the plaintiff's case is that the defendant violated his constitutional rights by forcing him to appear before the bail issuing court to defend against a petition for revocation of probation. The court has already determined, *supra,* that

the court concludes that the defendant is entitled to avail himself of the defense of qualified immunity, summary judgment in his favor will be entered.

## V.

■ Even assuming, *arguendo*, that the defendant was not entitled to qualified immunity, summary judgment entered against the plaintiff would still be appropriate. The Third Circuit Court of Appeals has determined that a claim for malicious prosecution is actionable under § 1983. *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 907 (3rd Cir.1984). The elements of liability for the constitutional tort of malicious prosecution under § 1983 coincide with those of the common law tort. *Compare Cap v. K–Mart Discount Stores, Inc.*, 357 Pa.Super. 9, 515 A.2d 52, 53 (1986), *with Bell v. Brennan*, 570 F.Supp. 1116, 1118 (E.D.Pa.1983). The requirements are that: (1) the defendant had initiated a criminal proceeding; (2) which ended in the plaintiff's favor; (3) which was initiated without probable cause; and (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice. *Id.* at 1118; *see also Lee v. Mihalich*, 847 F.2d 66, 71 (3rd Cir.1988) ("the § 1983 claim must include elements of the common law tort as it developed"). Upon a careful review of the present record, the court concludes that the plaintiff has failed to adequately allege that the defendant's conduct fell within the confines of the above criteria.

■ As noted above, the first element of the constitutional tort of malicious prosecution is the initiation of a criminal proceeding. Criminal proceedings "are commenced with the filing of an information or indictment based upon a charge decision made by a state attorney or grand jury, or at least an arrest pursuant to a summons

or arrest warrant issued by a committing magistrate." *Miami Herald Pub. Co. v. Ferre*, 636 F.Supp. 970, 977–78 (S.D.Fla. 1985) (the assignation of a case number, the issuance of subpoenas, the taking of sworn testimony and the signing of a formal waiver of immunity did not constitute the initiation of a criminal proceeding required for the tort of malicious prosecution); *see also* Restatement (Second) of Torts § 654 (1977). Pennsylvania follows that same general rule. *See Felker v. Angradi*, Civ. No. 90–1742, slip op. at 6–8, 1992 WL 170586 (M.D.Pa. February 21, 1992); *see also Jacquard Knitting Mach. Co. v. Ordnance Gauge Co.*, 213 F.2d 503 (3rd Cir.1954); *Bendorf v. McCormick*, 674 F.Supp. 15, 16 (W.D.Pa.1987). Here, the defendant participated in a proceeding to revoke probation, a *quasi*-criminal proceeding at best, which does not rise to the level of a criminal proceeding as that term is understood in the context of a malicious prosecution. Thus, the plaintiff has failed to make the necessary showing of proof as to at least one element of his case.[4] *See generally Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

■ The defendant alleges that the plaintiff has failed to show that the proceeding "terminated in [his] favor." *See* document 18 of record. However, as the plaintiff has carefully noted, "[a] favorable termination does not necessarily mean that the termination must be on the merits." *Brown v. Johnston*, 675 F.Supp. 287 (W.D.Pa.1987). For purposes of the tort of malicious prosecution, a termination consistent with innocence or one which "lack[s] reasonable grounds to proceed" will suffice. *Id.* at 289–90. Here, utilizing either standard, the court holds that the defendant's withdrawal of the petition for probation revocation, *had this been in the context of a criminal proceeding*, would

---

no constitutional deprivation had occurred here and now, read against the backdrop of Rule 4013, Rule 4011 does not support the plaintiff's contention that a statutory violation existed either, or at least that it was *clearly established* that the filing of a petition for probation revocation while a criminal defendant was free on bail would constitute a constitutional violation.

4. The court would note that the plaintiff's failure to meet the requisite proof as to this first element of the tort alone is sufficient to find summary judgment in favor of the defendant on the claim of malicious prosecution. The *Celotex* court required the failure of only *an* essential element of the non-moving party's case.

satisfy the element of a "termination in the plaintiff's favor."

■ The final element in dispute, the required showing of malice, cannot be satisfied by the plaintiff. Actual malice in the context of a malicious prosecution has been defined by the Third Circuit Court of Appeals as "either ill will in the sense of spite, lack of belief by the actor himself in the propriety *of the prosecution,* or its use for an extraneous improper purpose." *Lee,* 847 F.2d at 70 (emphasis added). Here, the plaintiff suggests that malice can be demonstrated from the defendant's advice, counsel and participation in the filing of the petition for revocation. The Court disagrees. A showing of malice in this context requires more than mere conclusory allegations; it cannot be asserted without corroborating factual specificity. *See Lee,* 847 F.2d at 70–71. In the present case, the plaintiff's bald assertion of malice, unsupported by a developed record,[5] cannot survive the defendant's motion for summary judgment.

Accordingly, because the plaintiff has failed to make a showing on an essential element of his case, i.e., that the defendant had initiated a criminal prosecution against him, summary judgment in favor of the defendant as to the plaintiff's claim of malicious prosecution is appropriate.

## VI.

■ Felker next claims an abuse of process by Christine for his participation in filing the probation revocation petition. An abuse of process claim is actionable under § 1983. *See Brown,* 675 F.Supp. at 290. The claim can be maintained "[w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process." *Id.* (*quoting Mines v. Kahle,* 557 F.Supp. 1030, 1039 (W.D.Pa.1983) (abuse of process generally concerns a use of the legal process for a purpose not intended by the

law)). The plaintiff does not factually support this claim; he merely asserts that the elements of the tort have been met. Nevertheless, upon an independent review of the record, the court concludes the abuse of process claim cannot be supported. The issue of malice, whether couched in terms of actual malice, as in a claim of malicious prosecution, or, as here, in an abuse of process claim, is inescapable. Some form of ill will or intentional impropriety is required in both torts. Here, it simply cannot be demonstrated in the record. Indeed, nowhere has the plaintiff been able to show *anything* similar to ill will or intentional impropriety on the part of the defendant. Thus, the plaintiff's claim of an abuse of process must be dismissed.

## VII.

■ The plaintiff also "has identified a liberty interest protected by the Fourteenth Amendment" and has alleged "a cause of action for a violation of his due process rights" that the court will construe as a procedural due process violation. It is undisputed that a claimant filing an action under 42 U.S.C. § 1983 must show that he has been denied a "right, privilege or immunity secured by the Constitution or laws of the United States." *See generally Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *rev'd on other grounds Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also* 42 U.S.C. § 1983. The plaintiff alleges that the potential loss of liberty that may have occurred, had his probation been revoked, constituted a "threat" to his liberty, which, in turn, is protected by the Fourteenth Amendment to the Constitution. Thus, the issue presented here is whether that perceived "threat" to his liberty is actionable by the plaintiff.

■ The court agrees with the plaintiff that "liberty," as the term is most often used, may include more than a freedom

5. The deposition of the defendant, attached to the plaintiff's brief in opposition to the defendant's motion for summary judgment, sheds no light on the issue of actual malice. Indeed, it suggests that the defendant did not participate in the actual preparation of the petition. *See* document 19 of record.

from physical custody or a protected property interest. *Accord Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Meyer v. State of Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). However, absent some authority, the court concludes that a threatened loss of liberty does not rise to the level of a Constitutional violation. Despite the plaintiff's protestations, the court finds *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428 (9th Cir.1985), most analogous to the present case. In *Western Reserve*, IRS agents sent "pre-filing notification letters" to the plaintiff warning him that his company may be in violation of the tax code if it attempted to avail itself of certain tax benefits. The letters further stated that the plaintiff's investors and limited partners would be notified as well. Several letters were mailed to the plaintiff and the plaintiff attempted to resolve the matter so that his investors and partners would remain uninformed of the matter, but to no avail. The letters were mailed to the investors and partners and the plaintiff's *Biven's* action resulted. The court stated that:

> Phillips further contends that he was denied a federally cognizable interest because the agents acted "with malice," and intended "to injure [and] embarrass" him. This contention is also devoid of merit. We have held conduct by an individual acting under color of law which is designed to *harass* and embarrass does not constitute a denial of a cognizable "liberty" or "property" interest in a claim brought under section 1983. *Rutledge v. Arizona Board of Regents*, 660 F.2d 1345, 1353 (9th Cir.1981), *aff'd sub nom. Kush v. Rutledge*, 460 U.S. 719 [103 S.Ct. 1483, 75 L.Ed.2d 413] (1983). Rather, such "transgressions constitute nothing more than a tort 'which the state may protect against ... by virtue of its tort law.'" *Id. quoting Paul v. Davis*, 424 U.S. 693 [96 S.Ct. 1155, 47 L.Ed.2d 405] (1976).

*Western Reserve*, 765 F.2d at 1433 (emphasis added). Here, the defendant had almost no contact with the plaintiff or his attorney concerning the filing of the petition. On the contrary, Angradi instituted the series of letters advising Felker of his obligation to sign the Rules and Regulations form. The defendant's role consisted of little more than an approval of Angradi's request to file the petition. The fact that the plaintiff perceived the defendant's decision as a threat cannot give rise to a constitutional violation. *See Jones v. Clark*, 607 F.Supp. 251, 255 (E.D.Pa.1984) ("Plaintiff alleges threats to place him in 'the hole' if he refused to cooperate and [to] authorize forfeiture of $6.40.... Jones [the plaintiff], in fact was never transferred to any such segregated cell. Thus, plaintiff was not deprived of any liberty interest.").

 Moreover, even if a cognizable liberty interest was implicated, the plaintiff received all the process that was due. As noted in the defendant's brief:

> ... the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner, *Morrissey v. Brewer*, 408 U.S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484] ... (1972), and this fundamental requirement has been met in the instant case. The best case that Plaintiff can make out is that he perceived a threat to his liberty interest, but that he was given an opportunity for a meaningful hearing in advance of the point in time when his liberty interest could be taken away by revoking his probation. In fact, the perceived threat never occurred.

*See* document 18 of record. Accordingly, based upon the present record, the court concludes that the plaintiff has failed to adequately allege either a liberty interest cognizable under the Fourteenth Amendment, or a denial of an opportunity to be heard which would give rise to a procedural due process claim actionable under § 1983.

## VIII.

 The plaintiff's final argument is that he was deprived of substantive due process by the defendant's participation in the filing of the petition. Substantive due process violations are generally those that are so arbitrary and unreasonable that they lack a substantial relation to the public health, safety and welfare. *Arroyo Vista*

**144**

*Partners v. County of Santa Barbara,* 732 F.Supp. 1046, 1053–54 (C.D.Cal.1990). Again, the plaintiff has not demonstrated *how* the defendant's actions in this case constituted the arbitrary and unreasonable actions required to sustain a claim of a substantive due process violation. Nothing in the present record indicates that the defendant's participation in the filing of the probation revocation petition constituted a "deliberate and arbitrary abuse of government power," *Bello v. Walker,* 840 F.2d 1124, 1129 (3rd Cir.1988); indeed, the record would suggest little more than an honest mistake on the defendant's part, corrected immediately prior to the scheduled hearing. Therefore, the plaintiff's substantive due process claims must be dismissed.

### IX.

In accordance with the above discussion, the court concludes that the plaintiff's action is not barred by the applicable statute of limitations; the defendant is entitled to qualified immunity for his actions; the plaintiff's claim of malicious prosecution and abuse of process must be dismissed; and similarly, the plaintiff's claims of procedural and substantive due process violations must be dismissed. An appropriate Order will be entered.

### ORDER

NOW, this 22nd day of April, 1992, IT IS HEREBY ORDERED THAT the defendant's motion for summary judgment is granted and the Clerk of Court is directed to close this case.