NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1338
_____

RACHAEL BOSEMAN,

Appellant

v.

UPPER PROVIDENCE TOWNSHIP;
P/O PATRICK REYNOLDS, No. 7723
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-2332)
District Judges:  Hon. C. Darnell Jones, II, Hon. Ronald L. Buckwalter
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 13, 2017

Before:  SMITH, *Chief Judge*, JORDAN, and SHWARTZ, *Circuit Judges*.

(Filed: February 27, 2017)
_____

OPINION*
_____

_____

＊ This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Rachel Boseman was arrested for driving under the influence of alcohol but was acquitted at trial. She then brought a civil rights action against the arresting police officer, Patrick Reynolds, and the municipality he works for, Pennsylvania's Upper Providence Township. The District Court granted the defendants' motion to dismiss and Boseman now appeals. We will affirm in part and vacate and remand in part.

## I. Background[1]

On April 11, 2014, just before 9:00 p.m., Boseman left her job as a financial consultant in Chadds Ford, Pennsylvania. She stopped at a Sunoco gas station across from her office and conducted a transaction at 9:03 pm. She then drove approximately twelve miles north on Route 1. Reynolds pulled her over around 9:25 pm, after she entered Upper Providence Township. She had not consumed any alcohol that day and had no criminal record.

In his police report, Reynolds said that he "detected a strong odor of alcohol emanating from within the vehicle" and that Boseman had "glassy and blood-shot eyes" and a "red face, blank stare, and slurred speech." (JA 47-48 at ¶ 11.) The report also

---

[1] As we are reviewing a motion to dismiss, we must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 786 n.2 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)).

indicated that Boseman failed a field sobriety test.  Boseman denies that any of those assertions are true, except that she may have had a red face.[2]

Reynolds arrested her and she was charged with driving under the influence of alcohol.  At trial, Reynolds testified that when Boseman was in his police car he attempted to read her the so-called *O'Connell* warnings, which describe individuals' rights related to blood testing when there is a suspicion of driving under the influence.[3]  Boseman denies that she was given the warnings in the vehicle.  Once at the police station, Reynolds gave Boseman a written copy of the *O'Connell* warnings.  Before she was able to review the warnings, Reynolds took the paper away and announced that Boseman had refused the blood test.  Boseman agreed to go to the hospital for a blood test, but Reynolds would not let her do so.

Boseman's bail was set at $5,000, unsecured, and she was released.  She rejected an offer from the prosecution to proceed by Accelerated Rehabilitative Disposition, a pre-trial intervention program for non-violent offenders.  She instead went to trial and was found not guilty.  Nevertheless, the Pennsylvania Department of Transportation sought to

---

[2] Boseman states in her Complaint that she "may have had a red face because she has a skin condition which gives her a rosy complexion, particularly when she is in a stressful situation."  (JA 48 at ¶ 13 n.1.)

[3] The warnings an officer is required to give prior to obtaining a blood test for alcohol are named after the case *Commonwealth Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989).  In her Complaint, Boseman states that "Defendant Reynolds testified at trial that he attempted to read the O'Connell Warnings to Plaintiff in the police car, which Plaintiff denies."  (JA 48 at ¶ 18.)  It is not clear what Reynolds meant when he said he "attempted" to read the warnings.

3

suspend her license because of her alleged refusal to take a blood test. Boseman alleges

that "[d]ue to her arrest and conditions of bail" she faced additional hardships. (JA 49 at

¶ 25.) Her "ability to travel was restricted and she was required to appear in court on

multiple occasions." *Id.* She lists six dates on which she was required to attend court.

Boseman says that Reynolds "has a history of making boilerplate allegations

against DUI suspects." (JA 49 at ¶ 26.) Her Complaint lists twenty-two instances of

Reynolds alleging one or more of the following in his police reports: a strong odor of

alcohol; glassy eyes; slurred speech; a flushed face; a staggered gait; and using a vehicle

to keep balance. In two of the incidents cited, the arrestees filed complaints against

Reynolds with the Police Department.

In a five-count Complaint against Reynolds and Upper Providence Township,

Boseman made count one a claim under 42 U.S.C. § 1983 against Reynolds alone. It

alleges violations of five different constitutional rights. Count two is brought under

*Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), against

Upper Providence Township for failure to train, supervise, investigate, or discipline its

employees. Counts three, four, and five are Pennsylvania state law claims against

Reynolds.

The District Court dismissed the Complaint without prejudice and, in its order,

stated that Boseman had twenty days to amend her Complaint to cure any deficiencies.

She did not amend but filed this appeal instead.[4] She appeals the dismissal of all of the

---

[4] The District Court's order provided that "Plaintiff has twenty (20) days in which to file an Amended Complaint." (JA 3.) Because Boseman did not file an Amended

counts, but, as to the first count, she only addresses the dismissal of two of the five constitutional violations.[5]

## II. Discussion[6]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Black v. Montgomery Cty.*, 835 F.3d 358, 364 (3d Cir. 2016), *as amended* (Sept. 16, 2016), *petition for cert. filed*, No. 16-846 (U.S. December 28, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). We will reject "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Connelly*, 809 F.3d at 786 n.2 (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)).

Complaint, the order is a final judgment for jurisdictional purposes. *See Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 279 (3d Cir. 2016) ("[W]e have held that a plaintiff can convert a dismissal without prejudice into a final order by 'declar[ing] his intention to stand on his complaint.'" (second alternation in original) (quoting *Borelli v. City of Reading*, 532 F.2d 950, 951–52 (3d Cir. 1976))). "By opting to not amend [her] complaint … [Boseman] elected to stand on [her] complaint … ." *Id.* (internal quotes omitted).

[5] The two that she appeals are, as more fully set forth herein, a malicious prosecution claim and a fabrication of evidence claim. The other three constitutional violations alleged in the Complaint were denial of the right to a fair trial; loss of physical liberty; and loss of property. She also appeals the District Court's grant of the defendants' motion to strike certain paragraphs of the Complaint.

[6] The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review the District Court's decision to grant a motion to dismiss under a plenary standard." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2016) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009)).

### A. Section 1983 Claims

A plaintiff seeking monetary damages under 42 U.S.C. § 1983 "must demonstrate that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Black*, 835 F.3d at 364 (quotation omitted). Boseman alleges that Reynolds violated her Fourth and Fourteenth Amendment rights. We consider each of those claims in turn.

#### 1. Fourth Amendment Malicious Prosecution Claim

Boseman asserts a malicious prosecution claim under the Fourth Amendment. That claim requires proof of five elements:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014) (alteration in original). The only prong that Boseman and Reynolds see eye to eye on is the second – they agree, as the historical record dictates, that Boseman was acquitted at her criminal trial. The District Court found that Boseman's complaint was deficient with respect to prongs one, three, and five.

We will assume that Boseman satisfied the first prong, which requires that Reynolds "initiated" the criminal proceeding against her. Reynolds was the arresting officer and the only inculpatory witness at Boseman's criminal trial. Presumably, but for Reynolds' arrest and report, Boseman would not have been charged. *See id.* at 297 ("It is

6

settled law that officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution … [i]f the officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution." (internal citation omitted)).

As to the third prong, we recognize that it is disputed whether or not the arrest was made with probable cause, and that "[g]enerally, the question of probable cause in a section 1983 damage suit is one for the jury."[7] *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (citation omitted).  Regardless of the existence of probable cause, we will affirm the dismissal of the claim because Boseman failed to plead any allegations with respect to the fourth prong of the test: a showing that the defendant "acted maliciously or for a purpose other than bringing the plaintiff to justice." *Halsey*, 750 F.3d at 297.  Indeed, the District Court explicitly noted that the parties did not

---

[7] "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  Reynolds described in his police report to support probable cause that he "detected a strong odor of alcohol emanating from within the vehicle," that Boseman had "glassy and blood-shot eyes … a blank stare, and slurred speech" and that she failed a field sobriety test.  (JA 47-48 at ¶¶ 11, 12.) Boseman denies these allegations and states that she did not drink alcohol that day.

Boseman points to the fact that she was acquitted at her subsequent trial and that Reynolds has used similar or identical statements of probable cause in other DUI cases. Although not dispositive, these facts suggest that Boseman has pleaded enough to survive a motion to dismiss on this question.  *But see Halsey*, 750 F.3d at 299 ("It is therefore irrelevant in a probable cause inquiry whether a person is later acquitted of the crime for which she or he was arrested." (internal quotation omitted)).

7

address this element.[8]  In her Complaint, Boseman provides only a conclusory allegation that Reynolds "acted with malice and furthered the prosecution of Plaintiff by providing false information, and/or withheld truthful information … ." (JA 111.)  This "[t]hreadbare recital[]" of an element of the cause of action cannot withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Because Boseman did not plead anything but a conclusory allegation of malice, we will affirm the dismissal of the Fourth Amendment claim.[9]

### 2. Fourteenth Amendment Fabrication of Evidence Claim

Boseman's second claim under 42 U.S.C. § 1983 invokes the Fourteenth Amendment and is for the use of fabricated evidence.  In *Halsey v. Pfeiffer*, we held that

---

[8] Boseman argues that the defendants waived their challenge to her Complaint on the malice element because they failed to raise the issue before the District Court.  We have explained that "[t]he waiver rule serves two purposes: ensuring that the necessary evidentiary development occurs in the trial court, and preventing surprise to the parties when a case is decided on some basis on which they have not presented argument." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011).  Where, as here, a dispositive decision was made at the motion to dismiss stage, the first purpose is not served because the evidence was not in dispute.  *Id.* at 834-35 (noting that the waiver rule applied with less force to an appeal from a ruling on a Rule 12(b)(6) motion because evidence is irrelevant to a Rule 12(b)(6) motion and the only issue is a purely legal question about whether a claim states a cause of action); *see also  Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 150 n.7 (3d Cir. 2014) (declining to apply the waiver rule to an appeal from a Rule 12(b)(6) dismissal, and noting that it would be "extremely unlikely that our *de novo* analysis would be materially affected if that question had been presented squarely at an earlier juncture").  As to the second purpose, Boseman has not stated that she was surprised by the need to show that she sufficiently alleged an element of her claim.  Accordingly, we will not deem the argument regarding malice to be waived.

[9] We need not reach the question of whether Boseman suffered a "deprivation of her liberty" within the meaning of the Fourth Amendment sufficient to establish the fifth prong of the test, *Halsey*, 750 F.3d at 297, because failure to meet prong four is dispositive.

8

such a claim is cognizable "if a defendant has been convicted at a trial at which the prosecution has used fabricated evidence." 750 F.3d at 294. In *Black v. Montgomery County*, we reasoned that an acquitted defendant can also bring such a claim if "there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." 835 F.3d at 371.

We cautioned in *Black*, however, that there are "hurdles facing a plaintiff alleging a due process violation for fabrication of evidence." *Id.* at 372. A plaintiff must demonstrate a "meaningful connection" between the injury and the use of the fabricated evidence. *Id.* (quoting *Halsey*, 750 F.3d at 294 n.19). There is also a requirement that the evidence be "so significant that it could have affected the outcome of the criminal case." *Id.* (quoting *Halsey*, 750 F.3d at 295). And, the standard required to demonstrate that evidence is fabricated is a "notable bar." *Id.* As an example, "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Id.* (quoting *Halsey*, 750 F.3d at 295). Lastly, because we require "persuasive evidence supporting a conclusion that the proponents of the evidence are aware that evidence is incorrect or that the evidence is offered in bad faith," *id.* (quoting *Halsey*, 750 F.3d at 295), we would look for allegations describing such evidence in a pleading designed to survive a motion to dismiss. Given those hurdles, we re-emphasized in *Black* that "we expect that it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having

9

fabricated evidence used in an earlier criminal case." *Id.* (quoting *Halsey*, 750 F.3d at 295).[10]

Boseman's conclusory allegations do not meet the standards we have set for a fabrication-of-evidence claim. She has not sufficiently demonstrated that the evidence against her was fabricated. She merely "denies" the conclusions Reynolds made in his police report. But our case law is clear that "testimony that is … simply disputed should not be treated as fabricated … ." *Black*, 835 F.3d at 372 (quoting *Halsey*, 750 F.3d at 295). As Reynolds points out, both *Black* and *Halsey* involved serious instances of evidence fabrication, quite distinct from the dispute here, in which even Boseman acknowledges that her face may have been red. *See Black,* 835 F.3d at 362-63 (involving significant fabrication and material omission of evidence in an arson prosecution)*; Halsey*, 750 F.3d at 278 (involving a coerced false confession that resulted in what we described as one of the "worse miscarriage[s] of justice" we had ever seen). If we were to hold that the "he said, she said" dispute here rises to the level of fabricated evidence, we would undermine the "unusual case" standard dictated by our precedent, which directs concern to cases in which there is actual evidence of fabrication.[11] *See also*

---

[10] We recognize, as we did in *Black* and *Halsey*, that the barriers are particularly challenging in the summary judgment posture where a plaintiff must demonstrate a genuine dispute of material fact. This does not mean, however, that all cases will survive a motion to dismiss. Where, as here, only conclusory allegations regarding the contents of a police report are pled, the claim will not survive.

[11] Maintaining a high bar for fabrication-of-evidence claims is essential, *see Halsey,* 750 F.3d at 295 (recognizing that our reasoning should not be used "beyond the scope of our holding"), to prevent "the prospect of suit" from "caus[ing] a deflection of the prosecutor's [and police officer's] energies from his public duties." *Whitlock v.*

10

*Whitlock v. Brueggemann*, 682 F.3d 567, 586 (7th Cir. 2012) (recognizing that successful fabrication of evidence claims will (hopefully) be "exceedingly rare"). Accordingly, we will affirm the dismissal of the Fourteenth Amendment claim.

### B. *Monell* Claim

Boseman alleges that Upper Providence Township "has encouraged, tolerated, ratified and has been deliberately indifferent" to a number of unconstitutional "patterns, practices, and customs." (JA 56 at ¶ 43.) This has, according to Boseman, resulted in systemic constitutional violations, including unlawful detentions and arrests, fabrications of evidence, malicious prosecutions, and disciplinary failures.

"A municipality may be held liable if a constitutional violation was caused by action taken pursuant to a municipal policy or custom." *Brown v. Commonwealth of Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) (citing *Monell*, 436 U.S. at 691). But the most regrettable policies or customs are irrelevant unless there has actually been a violation of the plaintiff's constitutional rights. *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992)). We have determined that Boseman did not adequately allege a violation of her constitutional rights and therefore we must also affirm the District Court's dismissal of the *Monell* claims against Upper Providence Township.[12]

---

*Brueggemann*, 682 F.3d 567, 586 (7th Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976)).

[12] The District Court granted the defendants' motion to strike paragraphs 26 through 31 of the Complaint. These paragraphs "allege[] that Reynolds used boilerplate allegations against DUI defendants" (Opening Br. at 31) and list examples of such

11

## C. State Law Claims

Boseman brought three Pennsylvania state law claims against Reynolds: malicious prosecution, false imprisonment, and assault and battery. The District Court dismissed each.

### 1. *Malicious Prosecution*

The tort of malicious prosecution under Pennsylvania law requires a showing of malice. *See Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988) ("A cause of action for malicious prosecution has three elements. The defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff.") (citation omitted). In Pennsylvania, "[m]alice may be inferred from the absence of probable cause," *In re Larsen*, 616 A.2d 529, 587 (Pa. 1992), but to survive a

---

instances. The defendants argued that "in every one of the referenced criminal cases … the disposition was either (a) guilty after trial; (b) a guilty plea[;] or (c) acceptance into the accelerated rehabilitative disposition program" and provided docket reports for the cases where available. (JA 37.) The District Court concluded that the paragraphs were "immaterial and confuse the issues in the litigation" and thus granted the defendants' motion under Federal Rule of Civil Procedure 12(f). (JA 40.) Boseman argues that "boilerplate allegations made by Reynolds are evidence of a lack of training and supervision … [and] should be an issue for discovery regarding the *Monell* claims." (Opening Br. at 32.)

Because the *Monell* claims cannot stand, the stricken paragraphs are immaterial, and the District Court did not abuse its discretion in granting the motion to strike. *Cf. Meditz v. City of Newark*, 658 F.3d 364, 367 n.1 (3d Cir. 2011) ("A district court abuses its discretion [in granting a motion to strike] if its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.") (quoting *Johnston v. HBO Film Mgmt. Inc.*, 265 F.3d 178, 183 (3d Cir. 2001)); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) ("We review the district court's decision to strike matter pursuant to Federal Rule of Civil Procedure 12(f) for abuse of discretion.").

12

motion to dismiss, a complaint must still provide more than conclusory allegations. As stated above, Boseman provides only a conclusory statement that Reynolds's actions were malicious. (JA 111.) Therefore, we will also affirm the dismissal of this claim. *See, e.g., Felker v. Christine*, 796 F. Supp. 135, 142 (M.D. Pa.), *aff'd*, 983 F.2d 1050 (3d Cir. 1992) ("A showing of malice … requires more than mere conclusory allegations; it cannot be asserted without corroborating factual specificity.").

### 2. *False Imprisonment*

"A police officer may be held liable for … false imprisonment when … he did not have probable cause to make an arrest." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Under Pennsylvania law, probable cause is present "when 'the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.'" *Id.* (quoting *Commonwealth v. Rodriguez*, 585 A.2d 988, 990 (Pa. 1991)). Unlike federal courts, Pennsylvania courts generally conceive of probable cause as a question of law. *See Kelley*, 544 A.2d at 941 ("Usually, the existence of probable cause is a question of law for the court rather than a jury question … ."). Still, the question "may be submitted to the jury when facts material to the issue of probable cause are in controversy." *Id.* Because the facts surrounding the probable cause determination are in dispute here, *see supra* n.7, we will vacate the dismissal of this claim and remand to the

13

District Court to either exercise supplemental jurisdiction over this claim or to dismiss it without prejudice so that Boseman can pursue it in state court.[13]

### 3. Assault and Battery

We will also vacate the District Court's dismissal of the assault and battery claim. "In making a *lawful* arrest … [t]he reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Renk*, 641 A.2d at 293 (emphasis added). Boseman argues that, because the arrest was made without probable cause, it was unlawful. We agree that a jury could conclude that an arrest made without probable was unlawful, and therefore an assault and battery. *See Renk*, 641 A.2d at 293-94 ("It is conceivable that a jury could find a police officer liable for [assault and battery] under circumstances which demonstrate that the officer … did not deliberately arrest a person knowing that he lacked probable cause to do so."). We will thus also vacate and remand the assault and battery claim to the District Court with the same instructions as pertain to the false imprisonment claim.

## III. Conclusion

For the foregoing reasons, we will affirm in part and vacate and remand in part.

---

[13] Of course, statute of limitations concerns may play a role in deciding whether the case should be kept or dismissed without prejudice. The defendants believe that Boseman conceded probable cause when she waived her preliminary hearing in state court. Whether waiving the hearing amounts to a concession that there was probable cause is a matter we leave for the District Court to consider in the first instance, if it chooses to keep the case. We note, however, that, even when a probable cause determination has been made, Pennsylvania law does not appear to treat that determination as definitive in a subsequent civil suit. *Cosmas v. Bloomingdales Bros.*, 660 A.2d 83, 86-87 (Pa. Super. Ct. 1995) (holding that a finding of probable cause at a preliminary hearing may be evidence of probable cause in a subsequent suit, but it is not conclusive).